IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | DOCKET NO. 5:24-cr-00021 |
| VERSUS | JUDGE FOOTE |
| TIMOTHY M. LATHAM | MAGISTRATE JUDGE HORNSBY |

**DEFENDANT'S MOTION TO DISMISS COUNT 1 OF THE INDICTMENT AND INCORPORATED MEMORANDUM IN SUPPORT**

NOW INTO COURT comes the defendant, TIMOTHY M. LATHAM, through undersigned counsel, who respectfully moves this Court to dismiss the Indictment under Fed. R. Crim. P. 12(b)(1), 12(b)(2) and 12(b)(3)(B)(v).

**I. The Basis of the Motion.**

Count 1 of the indictment charges the defendant with being a felon in possession of a firearm on March 17, 2023. The defendant brings this motion to raise two separate grounds for dismissing the indictment in this case. His first claim is grounded in the plain text of the Second Amendment. It asserts that the statutory prohibition set forth in § 922(g)(1) violates the Second Amendment's guarantee of "the right of the people to keep and bear Arms."

The defendant's second claim is grounded in Congress' lack of power to criminalize conduct relating to the possession of firearms which have already traveled in interstate commerce, but are no longer doing so. It asserts that § 922(g)(1)'s prohibition against felons possessing firearms is not supported by any enumerated power granted to Congress in the Constitution and

lies beyond the reach of the commerce clause.

## II. The Second Amendment Claim.

Last year's Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) set forth the standard for analyzing regulations restricting the right to bear arms under the Second Amendment.

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2129–30 (2022).

In so holding, the Supreme Court rejected lower courts' former use of means-end scrutiny in Second Amendment cases.[1] *See id.* at 2125–27 & n.4 (abrogating *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185 (5th Cir. 2012)). Instead, if the Government wants to impose limits on the possession of firearms, it must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127.

### A. The Second Amendment's plain text covers the conduct proscribed by 18 U.S.C. § 922(g)(1).

The Second Amendment provides:

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

Applying *Bruen*'s standard, the plain text of the Second Amendment covers the possession

---

[1] In simple terms, "means-end scrutiny" allows "judges to assess the costs and benefits of firearms restrictions" in a Second Amendment analysis. *Bruen*, 142 S.Ct. 2129.

of a firearm that § 922(g)(1) criminalizes. First, the amendment's term "'[k]eep arms' was simply a common way of referring to possessing arms" at the time of the amendment. *Heller*, 554 U.S. 570, 583 (2008). Second, it is clear that the defendant is one of "the people" under the Second Amendment's plain text. *Id.* at 581 (noting that the Second Amendment right "belongs to all Americans"); *Id.* at 580 (quoting prior decision describing "the people" as the "class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community"); *see also, e.g.*, U.S. Const. amend. I (using "the people" in Assembly-and-Petition Clause); U.S. Const. amend. IV (using "the people" in Search-and-Seizure Clause). *Bruen* reiterates that the Second Amendment guarantees to "all Americans" the right to keep and bear arms. 142 S. Ct. at 2156.

Because the Second Amendment's plain text covers the defendant as a member of "the people," and the firearm he allegedly possessed was otherwise lawful, the Second Amendment "presumptively protects" his possession of the firearm. *Bruen*, 142 S. Ct. at 2129–30.

**B. The prohibition against felons contained in § 922(g)(1) is not consistent with the Nation's historical tradition of firearm regulation.**

Having established the defendant's conduct was presumptively lawful under the Second Amendment, the only remaining question is whether the prohibition against felons imposed in § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30. The Government cannot meet this burden.

The Fifth Circuit has previously stated that "the federal felony firearm possession ban, 18 U.S.C. § 922(g)(1) 'bears little resemblance to laws in effect at the time the Second Amendment was ratified,' as it was not enacted until 1938, was not expanded to cover non-violent felonies until 1961, and was not re-focused from receipt to possession until 1968." *Nat'l Rifle Ass'n of Am.*, 700

F.3d at 196, *abrogated by Bruen*, 142 S. Ct. 2111 (quoting *United States v. Booker*, 644 F.3d 12, 23–24 (1st Cir. 2011)).

Then-Judge Barrett (now Supreme Court Justice Barrett) and other jurists have likewise concluded that "[f]ounding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons." *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting); *see, e.g.*, *id.* at 453–64 (surveying history); *Folajtar v. Att'y Gen. of U.S.*, 980 F.3d 897, 914 (3d Cir. 2020) (Bibas, J., dissenting) ("[T]he issue of disarming felons is open. Precedent does not settle its historical limits. Rather, we must analyze the history ourselves and ask: Were all felons, dangerous and nondangerous alike, equally excluded from the Second Amendment? No, they were not."); *United States v. McCane*, 573 F.3d 1037, 1048 (10th Cir. 2009) (Tymkovich, J., concurring) ("[M]ore recent authorities have *not* found evidence of longstanding dispossession laws.").

Numerous scholars, too, have concluded that "no colonial or state law in eighteenth-century America formally restricted the ability of felons to own firearms." *See, e.g.*, Larson, *supra*, at 1374; C. Kevin Marshall, *Why Can't Martha Stewart Have A Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 698 (2009) (observing that such prohibitions have their origins in the twentieth century).

Based on the prohibition's twentieth century genesis, the prosecution cannot meet its burden of establishing that § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30. Because the prosecution cannot establish the requisite historical tradition, § 922(g)(1) is unconstitutional as applied to the defendant.

**C. The *dicta* in *Bruen* regarding the continuing validity of the statutory prohibition against firearms does not control the outcome in this case. Rather, *Bruen*'s holding governs the outcome in this case.**

Justice Kavanaugh in his concurring opinion in *Bruen* reiterated Justice Scalia's comment

4

in *District of Columbia v. Heller*, 554 U.S. 570, 626–27 & n.26 (2008) regarding the statutory prohibition against felons:

> [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.
>
> <u>Bruen</u>, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring).[2]

Several circuits including the Fifth, have described Justice Scalia's language regarding § 922(g)(1) in *Heller* as dicta. See, *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); *accord, e.g.*, *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 691–92 (6th Cir. 2016) (en banc); *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010). As such, *Heller's* dicta and its repetition in *Bruen* -– without citation or historical analysis – is not outcome determinative in the instant case.

In the final analysis, *Bruen* "did not attempt to bolster [the] reasoning"—or lack of it—underlying *Heller*'s dicta. Instead, *Bruen* held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively *protects* that conduct." 142 S. Ct. at 2126 (emphasis added). Furthermore, the *Bruen* Court held that "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* "Only if" the government meets its burden, may a court uphold a regulation as constitutional. *Id. Bruen*'s holding must prevail over Justice Scalia's dicta in *Heller*. *See Heller*, 554 U.S. at 625 n.25 ("It is inconceivable that we would rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a footnoted dictum in a case where the point was

---

[2] Justice Alito later repeated the dictum in *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

5

not at issue and was not argued.").

### III. The Enumerated Powers and Commerce Clause Claim.

The commerce clause does not give Congress the power to exercise jurisdiction over firearms merely because they moved across state lines at some point in the past. In the instant case, the fact that the firearm was not manufactured in Louisiana is the sole jurisdictional hook upon which the Government relies. It is the only connection between the defendant's alleged unlawful possession of a firearm and interstate commerce.

The federal government's enumerated powers are "few and defined," while the powers which remain in the state governments are "numerous and indefinite." *United States v. Lopez*, 514 U.S. 549, 552 (citing The Federalist No. 45, pp. 292–293 (C. Rossiter ed. 1961)). One of the enumerated powers granted to Congress is "[t]o regulate Commerce . . . among the several States." U.S. Const., Art. I, § 8, cl. 3. As the Supreme Court explained in *Lopez*, the commerce power "is subject to outer limits." 514 U.S. at 557. The *Lopez* Court found that the commerce power does not authorize regulation of a purely local, non-economic activity like "possession of a gun in a school zone." *Id*. at 560. The Court held that the original version of 18 U.S.C. § 922(q) (the Gun-Free School Zones Act) exceeded Congress's powers:

> Section 922(q) is a criminal statute that by its terms has nothing to do with "commerce" or any sort of economic enterprise, however broadly one might define those terms. Section 922(q) is not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated. It cannot, therefore, be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce. *Id.* at 561.

The power to prohibit possession of an item that has previously moved in interstate commerce is effectively a general police power. It allows Congress to reach acts like possession that have little or nothing to do with commerce, let alone interstate commerce, for reasons that

have nothing to do with standardizing or protecting commerce occurring across state lines. And most importantly, it leaves essentially nothing as the exclusive province of state regulation.

The founding generation could not have imagined a law like § 922(g)(1) because it never endowed Congress with the power to forbid possession of a firearm for personal protection. This claim, however, is foreclosed in this Circuit: The Fifth Circuit recently denied rehearing *en banc* in a case where the defendant argued § 922(g) exceeded Congress's enumerated powers. Seven judges dissented, three of them joining a written opinion. See *United States v. Seekins*, 52 F.4th 988, 989 (5th Cir. 2022), cert. denied (Ho, J., dissenting from denial of reh'g *en banc*, joined by two other Judges) ("If the only thing limiting federal power is our ability to document (or merely speculate about) the provenance of a particular item, the Founders' assurance of a limited national government is nothing more than a parchment promise."). Although this particular claim is foreclosed, the defendant brings it in order to preserve it for further review.

## IV.     Conclusion.

Under *Bruen's* "standard for applying the Second Amendment," the Second Amendment's plain text covers the defendant's possession of a firearm. The prosecution cannot meet its burden of demonstrating that this application of § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation." Accordingly, § 922(g)(1) is unconstitutional as applied.

Section 922(g)(1)'s prohibition against felons possessing firearms is not supported by any enumerated power granted to Congress in the Constitution and lies beyond the reach of the commerce clause. The defendant acknowledges that this particular claim is foreclosed by precedent but nevertheless raises it in order to preserve it for further review.

**WHEREFORE**, Mr. Latham respectfully asks this Court to grant his motion to dismiss the indictment.

**Rebecca L. Hudsmith**
Federal Public Defender, Western &
Middle Districts of Louisiana

*s/ Betty L. Marak*

_____
Betty L. Marak, La. Bar Roll No. 18640
Assistant Federal Public Defender
300 Fannin Street, Ste. 2199
Shreveport, Louisiana 71101
Tel: (318) 676-3310
Fax (318) 676-3313
Email:  betty_marak @fd.org

8